**In re CARNEGIE INTERNATIONAL CORPORATION, et al., Debtors.**

**Bankruptcy Nos. IP82–1095RA to IP82–1097RA.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

April 17, 1984.

John R. Van Winkle, Richard W. Fields, Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for Thomas H. and R. Victoria Kennedy.

Sigmund J. Beck, Bamberger & Feibleman, Indianapolis, Ind., for Real Estate Investors Committee.

John R. Carr, Jr., Buschmann, Carr & Meyer, Indianapolis, Ind., for Unsecured Creditors Committee.

Don A. Tabbert, Bayh, Tabbert & Capehart, Indianapolis, Ind., as examiner.

James M. Carr, Baker & Daniels, Indianapolis, Ind., for Carnegie Intern. Corp., Financial Planning Services Corp. and Carnavest.

Elliott D. Levin, Rubin & Levin, Indianapolis, Ind., for Equity Sec. Holders Protective Committee.

## ENTRY

ROBERT L. BAYT, Bankruptcy Judge.

This matter comes before the Court upon the Objection of Thomas H. Kennedy and R. Victoria Kennedy (the "Kennedys") to the Appointment of Don A. Tabbert and Bayh, Tabbert & Capehart to Pursue Lawsuits and a Request for Hearing Thereon filed December 5, 1983. On January 9, 1984, the Kennedys filed a brief in support of their objection, along with a motion for hearing on that issue.

A pretrial conference was held on January 31, 1984. At that conference, Richard W. Fields appeared for the Kennedys; James M. Carr appeared for Carnegie International Corporation, Financial Planning Services Corporation and Carnavest (the "debtors"); Elliott D. Levin appeared for the Equity Security Holders Protective Committee; Sigmund J. Beck appeared for the Real Estate Investors Committee; John R. Carr, Jr. appeared for the Unsecured Creditors Committee; and Don A. Tabbert appeared as Examiner. The Kennedys withdrew their request for an evidentiary hearing and requested the Court to make its decision on the basis of the briefs submitted. The other parties agreed to this proposal. The Examiner's Brief in Opposition to the Kennedys' Objection was filed on February 7, 1984; also filed on that date was the Joint Brief of Real Estate Investors Committee, Equity Security Holders Protective Committee and Unsecured Creditors Committee in Opposition to Kennedys' Objection to Expansion of Examiner's Duties. The Debtors' Brief in Opposition to Kennedys' Objection to Expansion of Examiner's Duties was filed February 8, 1984. In response to these three briefs, the Kennedys filed a reply brief on February 24, 1984. Upon due consideration of the arguments advanced by the parties, the Court now finds that the Objection of Thomas H. Kennedy and R. Victoria Kennedy to the Appointment of Don A. Tabbert and Bayh, Tabbert & Capehart to Pursue Lawsuits and a Request for Hearing Thereon should be OVERRULED.

This Court appointed Don A. Tabbert as Examiner on March 30, 1982. At that time, the Court noted that unsecured creditors and the debtors were interested in conserving resources and maximizing the interests of the estate in seeking the appointment of an examiner. Among the duties charged to the Examiner was the filing of a statement of his investigation, including a report of all facts pertaining to any cause of action available to the estate.

On July 13, 1982, the debtors applied to the Court pursuant to Bankruptcy Rule 205(a) for the examination of Thomas H. Kennedy, R. Victoria Kennedy, Kennedy & Kennedy, P.C., and Alexander Kennedy Real Properties, Inc. The debtors also moved for the production of documents and other tangible things relating to the depreciable property program, the loan program and various other activities as defined in the debtors' application. On July 16, 1982, the Kennedys filed their Application to Intervene in these bankruptcy cases. In that application the Kennedys acknowledged that the debtors might have causes of ac-

tion against them. On August 12, 1982, the debtors filed their Reply to the Kennedys' Response to the Debtors' Application for Examination under Bankruptcy Rule 205. There, the debtors stated that "the information which Carnegie seeks to discover from the Kennedys by a Rule 205 examination ... may uncover information which Carnegie needs to prosecute causes of action against ... the Kennedys and others ... [and] claims by the estate against third parties are potentially an important asset of the estate."

The Kennedys' actions clearly reveal that they and their counsel knew no later than the summer of 1982 that the Examiner would investigate whether the estate had causes of action against them. The Kennedys cannot claim that they were unaware that potential causes of action against them were included within the investigation being conducted by the Examiner.

The Examiner's report, filed November 29, 1983, contained the conclusion that causes of action on behalf of the estate exist against the Kennedys. On December 2, 1983, this Court entered its order authorizing the Examiner to institute litigation in order to collect and reduce to money property of the estate in the form of causes of action which the estate holds against third parties. The Court noted that the estate would incur unnecessary additional expense if it appointed a trustee to commence litigation instead of authorizing the Examiner to do so, and that the appointment of a trustee would not be in the best interest of the estate. Because authority exists for the expansion of the Examiner's powers pursuant to § 1106(b) of the Bankruptcy Code, the Court ordered that such actions be prosecuted by the Examiner in the names and under the title of debtors-in-possession for the benefit of the estate. The order requires the Examiner to confer with counsel for the various committees prior to the initiation of any suit. Any dispute regarding a decision to bring suit may be brought to the Court by the Examiner or by any committee.

The Kennedys' objection to the expansion of Mr. Tabbert's powers is premised on two grounds. First, they contend that the expansion undermines the intent of 11 U.S.C. §§ 321(b) and 327(f). Second, the Kennedys argue that the action creates conflicts between the Examiner's new court-delegated duties and his responsibilities under § 1104(b) of the Bankruptcy Code. These arguments will be considered separately.

### I. 11 U.S.C. §§ 321(b) and 327(f)

■ The Kennedys contend that this Court's action expanding the Examiner's powers undermines the spirit and intent of 11 U.S.C. §§ 321(b) and 327(f). Section 321(b) prohibits a person who has served as an examiner from serving as a trustee in the same case. Similarly, § 327(f) precludes employment by the trustee of any person who has served as an examiner. The policies underlying both sections are the same: to insure that the examiner conducts his investigatory duties in a purely objective fashion, and further, to guard against accusations that the examiner filed a critical report in the hopes of being employed to litigate actions arising out of that report.

The Court's action here in no way compromises these policies. Mr. Tabbert did not actively seek to have his duties expanded—he merely submitted an extensive report recommending a variety of causes of action. The Examiner's recommendations of suit are required by statute, 11 U.S.C. § 1106(a)(4); they are not gratuitous suggestions by one desirous of continuing his employment. Upon receipt of the report, representatives of creditors and equity holders and the Court had numerous alternatives, including the appointment of a trustee, the hiring of special counsel or authorizing one of the committees to bring suit on the debtors' behalf. The committees representing creditors and equity security holders jointly moved for an expansion of the Examiner's powers. Thus, the very parties intended to be protected by the prohibitions contained in §§ 321(b) and 327(f) agreed that an expansion of the Ex-

aminer's powers was proper and in the best interest of the estate.

Because the decision to expand the Examiner's powers was made after the filing of his report, there can be no basis for suspecting the contents of that report. Mr. Tabbert was not privy to the discussions leading to the decision to broaden his authority. He could not, therefore, have prepared his report with an eye towards that eventuality. Mr. Tabbert's propriety is attested to by the Kennedys who admit in their brief that the Examiner's report and his conduct during the investigation were entirely consistent with his duties under the Bankruptcy Code.

Not only is there no risk of prejudice in the Examiner's report, but precedent clearly exists for expanding the Examiner's duties. In *In the Matter of Liberal Market, Inc.*, 11 B.R. 742 (S.D.Ohio 1981), the powers of the examiner were expanded to allow the prosecution of actions which might contribute to the assets of the estate, and in *Liberal Market, Inc. v. Malone & Hyde, Inc.*, 14 B.R. 685 (S.D.Ohio 1981), the Court explicitly considered whether the examiner could represent the interest of the debtor-in-possession in causes of action and ruled that the examiner may have such powers.

11 U.S.C. § 1106(b) allows an examiner to perform the duties of a trustee set forth in § 1106(a)(3) and (4), as well as "any other duties of the trustee that the Court orders the debtor in possession not to perform." This provision grants the Court discretion "to give the examiner additional duties as the circumstances warrant." H.R.Rep. No. 595, 95th Cong. 1st Sess. 404 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, 5787. Section 1106(b) is derived from Rule 10–208(b), applicable in Chapter X cases, which in turn derived from and superceded § 168 of the Chandler Act. 11 U.S.C. § 568 (superceded). Under § 168, a court could continue a debtor-in-possession and appoint an examiner to perform any or all of the duties of a trustee set forth in

§ 167 of the Chandler Act. 11 U.S.C. § 567 (superceded). These duties included:

The trustee upon his appointment and qualification—

(1) shall, if the judge shall so direct, forthwith investigate the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the proceeding or to the formulation of a plan, and report thereon to the judge;

(2) may, if the judge shall so direct, examine the directors and officers of the debtor and any other witnesses concerning the foregoing matters or any of them;

(3) shall report to the judge any facts ascertained by him pertaining to fraud, misconduct, mismanagement and irregularities, and to any causes of action available to the estate;

\* \* \* \* \* \*

(5) shall, at the earliest date practicable, prepare and submit a brief statement of his investigation of the property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, in such form and manner as the judge may direct, to the creditors, stockholders, indenture trustees, the Securities and Exchange Commission, and such other persons as the judge may designate.

See also Bankruptcy Rules 10–208(a) and (b).

In view of the nearly identical statutory framework now employed in § 1104 and § 1106, prior practice in Chapter X cases should settle any question as to the propriety of permitting an examiner to bring suit on a debtor's behalf. Under Chapter X an appointment of an examiner:

... may be made to investigate the debtor's affairs for the purpose of ascertaining whether the debtor's officers have been guilty of fraud, misconduct, mismanagement, or other irregularities. In this latter connection, it should be observed that the title to causes of action

against responsible officials is lodged in the debtor as a representative of the court and the estate, and primarily the duty to enforce such rights, if valuable, rests with the debtor. Stockholders or creditors, therefore, cannot proceed independently in behalf of the estate to prosecute causes of action against officers or directors. If there is a basis for believing that an investigation is warranted to determine whether the debtor corporation has causes of action against the management (former or present) or other persons, or that such causes of action exist which the debtor is not satisfactorily pursuing, interested parties may pursue a number of courses. They may seek authorization for a Rule 10–213 examination to disclose facts, or apply to the court for the appointment of an examiner to investigate and report to the court in the manner provided in Rule 10–208(a)(4), (5) and (6); or that the court terminate the debtor's possession and appoint a trustee pursuant to Rule 10–202(d); that the debtor be ordered to prosecute a particular chose in action or that the petitioners be allowed to proceed in the debtor's name after indemnifying the estate against loss. *There is nothing in the Act which vests title to causes of action in the examiner—title is either in the trustee or in the debtor continued in possession, as the case may be; and hence we conclude that if an examiner is appointed he may not bring suit in his own name. We believe, however, that as an incident to the performance of the duties which the court may impose upon him under Rule 10–208(a), the court may direct him to institute and prosecute actions in the name and for the benefit of the debtor corporation.* Rule 10–208(a)(4), (5) and (6) provide for the investigation of the acts, conduct, and financial condition of the debtor; examination of the directors, debtor's officers and other persons relative to any cause of action available to the estate; and report to the court concerning any facts ascertained pertaining to fraud, misconduct, misman-

agement and irregularities, and any causes of action available to the estate. See ¶¶ 721–7.23, supra. While no specific mention is therein made of suit upon any disclosed cause of action, *it is fair to conclude that the court may authorize the examiner to see that the information which he unearths is put to use by instituting and controlling a suit brought in the debtor's name.* This construction would be in line with § 216(13), which is useful at a later time and which provides that a plan may provide for the retention and enforcement of causes of action "if the debtor has been continued in possession, by an examiner appointed for the purpose" and which, we believe, provides for the enforcement by the examiner in the name of the debtor.

6 *Collier on Bankruptcy* ¶ 7.30, pp. 1280, 1281 (14th Ed.1977) (citations omitted, emphasis supplied).

In summary, § 1106(b), like its statutory predecessors, vests discretion in the court to appoint an examiner when the appointment of a trustee would be inappropriate and to assign an examiner any of a trustee's duties. Practice under Chapter X plainly contemplated that an examiner not only conduct his investigation but, where circumstances warranted, bring suit against wrongdoers in the debtor's behalf. 11 U.S.C. § 616(13) (superceded). Here, the reasons for authorizing the Examiner to bring suit are compelling. First, and foremost, the expense entailed in appointing a trustee, hiring special counsel or authorizing the committees to bring suit on the debtors' behalf is unjustified. The Examiner has invested numerous hours of research and investigation, an expense for which the estate is already liable. Common sense and the interests of creditors and equity holders suggest that such administrative expenses be kept to a minimum and that the estate derive the maximum benefit from costs already incurred. Plainly, authorizing the Examiner, who is thoroughly familiar with these causes of action, to bring suit will minimize expenses and maximize benefits to the estate. Sec-

ond, the conditions of the Examiner's appointment require consultation with the committees prior to the initiation of suit and the Court retains the ultimate power to oversee the conduct of the Examiner's prosecution of such actions. Thus, the interests of the ultimate beneficiaries of any suits retain an effective means to control prosecution of such actions.

## II. Conflicts

■ The Kennedys' suggestion, that the expansion of the Examiner's duties conflicts with § 1104(b) of the Bankruptcy Code, is entirely misplaced. The Kennedys contend that the Examiner is changing hats, removing a "quasi-judicial" hat and putting on an adversarial one, to their detriment. Two questions are raised by this charge: did the Kennedys rely upon the Examiner's "quasi-judicial" or non-adversarial position in providing information they would not otherwise have provided; and, if so, were they entitled to assume the Examiner would respect the confidentiality of their disclosures.

Section 1106(a)(4) provides that a trustee shall:

> (4) as soon as practicable—
>
> (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and
>
> (B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates; ...

It is plain that the Examiner's statement of his investigation is to include recommended causes of action. For the Kennedys to suggest that they were somehow misled as to the purpose of the Examiner's investigation is flatly contradicted by the statute authorizing the Examiner's appointment.

■ Moreover, to argue that the information disclosed to an examiner is confidential and cannot be used in subsequent proceedings on the estate's behalf contravenes the obvious purpose of the statute. Section 1106(a)(4) is derived from Rule 10–208(a)(5) which in turn was based on § 167 and § 168 of the Chandler Act. Rule 10–208(a)(5) and (a)(7) provided that a trustee shall:

> (5) file a report with the court concerning any facts ascertained by him pertaining to fraud, misconduct, mismanagement, and irregularities, and to any cause of action available to the estate; ... (7) as soon as practicable, file a statement of his investigations, and cause copies or a summary thereof to be mailed to the creditors, stockholders, indenture trustees, the Securities and Exchange Commission, and such other persons as the court may designate.

Under B.R. 10–208 the information disclosed to an examiner was freely available to those parties as the court directed:

> The "investigations" as to which the trustee is required to file a statement are those referred to in Rule 10–208(a)(4) to "investigate the acts, conduct, liabilities and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the case or to the formulation of a plan." Under § 167(5), from which Rule 10–208(a)(7) is derived, there was some perplexity as to the contents of the statement contemplated by the statute. It was argued that the report to the judge required by § 167(3) [now Rule 208(a)(5) ] concerning facts ascertained pertaining to fraud, misconduct, mismanagement and irregularities, and causes of action available to the estate, was to be distinguished from § 167(5) [now Rule 10–208(a)(7) ] which required a statement of the trustee's investigation to be transmitted to creditors, stockholders, indenture trustees and the Securities and Exchange Commission. The subject matter of the statement, it was said, was more restricted in scope than the investigation provided for

in § 161(1)(sic), having as its principal aim a resume' of the debtor's condition. The report to the judge, on the other hand, it was said, was directed not only towards the debtor's financial condition but also the character and quality of the management, the causes of the debtor's distress, and particularly the existence or non-existence of fraud, misconduct or irregularities in the conduct of the debtor's affairs that might give rise to causes of action in favor of the estate.

This distinction, if it ever had any validity, no longer exists under Rule 10–208(a)(7). The Rule requires that the trustee file and mail to the designated parties "copies or a summary of his investigations." *The word "investigations" thus used is comprehensive and includes everything uncovered by the trustee, not only information relating to debtor's acts, conduct, liabilities, financial condition, operations of the business and desirability of continuance thereof and any matter relevant to the case or the formulation of a plan, but also as to those facts he reported to the court under Rule 10–208(a)(5) concerning fraud, misconduct, mismanagement, irregularities and causes of action. These latter facts, in any event, would certainly fall within the ambit of matters "relevant to the case or to the formulation of a plan."* (Emphasis supplied).

6 *Collier on Bankruptcy* ¶ 7.25, pps. 1270, 1271 (14th Ed.1979).

Both under the Act and the Code everything uncovered by an examiner including facts reported to the court regarding possible causes of action, is to be made available to estate representatives. The mere fact that an examiner may bring or has brought suit against the witness will not prevent examination pursuant to his statutory powers. *Matter of Paramount Publix Corp.,* 82 F.2d 230 (2d Cir.1936); *Marx v. Chase Nat'l. Bank,* 117 F.2d 800 (2nd Cir.1941). 6 *Collier on Bankruptcy* ¶ 7.23, p. 1260 (14th Ed.1979).

The logic supporting this position is obvious. The very purpose of the Examiner's report is to "insure prosecution of all causes of action." 5 *Collier on Bankruptcy* ¶ 1106.01, p. 1106–29 (15th Ed.1983) (quoting approvingly from the legislative history of the Chandler Act provision superceded by § 1106). The claims against third parties are assets of the debtor which are to be liquidated for the benefit of the estate. It is simply wrong to contend, as the Kennedys have done, that information supporting such claims cannot be utilized by the estate in prosecuting causes in action.

Finally, while the Kennedys argue vehemently against the expansion of the Examiner's powers, they offer no objection to the appointment of a trustee. If, instead of expanding the duties of the Examiner, the Court had appointed a trustee, that trustee would have had access to the same information as Mr. Tabbert. Thus, the position of the Kennedys is no worse with Mr. Tabbert conducting the litigation than it would have been had a trustee been appointed.

For the above-stated reasons, the Objection of Thomas H. Kennedy and R. Victoria Kennedy to the Appointment of Don A. Tabbert and Bayh, Tabbert & Capehart to Pursue Lawsuits and a Request for Hearing Thereon is hereby OVERRULED.