## In re JOHN PETERSON MOTORS, INC., Debtor.

**Bankruptcy No. 4-84-1908.**

United States Bankruptcy Court, D. Minnesota.

Feb. 8, 1985.

Gregory J. Pulles, Stephen F. Grinnell, Mackall, Crounse & Moore, Minneapolis, Minn., for GMAC.

William A. Bierman, Jr., Ronald B. Sieloff, Sieloff & Bierman, P.A., St. Paul, Minn., for debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR APPOINTMENT OF EXAMINER

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on the motion of General Motors Acceptance Corporation (GMAC) for the appointment of a trustee.

Gregory J. Pulles and Stephen F. Grinnell appeared on behalf of GMAC. William A. Bierman, Jr. and Ronald B. Sieloff appeared on behalf of the debtor. D. Douglas Blanke and Don Johnson, Assistant Attorneys General, appeared on behalf of the State of Minnesota. Donald DeVaughn appeared on behalf of the First National Bank of Plainview. Steven L. Erwin appeared on behalf of Laverne Herron and Clifford Sogla.

### FINDINGS OF FACT

1. John Peterson Motors, Inc. (debtor) is a retail automobile dealer and filed a petition under Chapter 11 of Title 11 on October 30, 1984.

2. Prior to the commencement of the case, GMAC financed the debtor's inventory of new motor vehicles.

3. Prior to the commencement of the case, the debtor sold a number of new motor vehicles subject to GMAC's security interest without paying GMAC for such

vehicles as required by the security agreements between the debtor and GMAC.

4. On the date of the filing of the case, the debtor owed GMAC approximately $225,000.00 for such sales and was therefore "out of trust" in that approximate amount. Of such funds, some was apparently being held in the form of checks, some was deposited in a savings account by one of the debtor's attorneys and some more was perhaps held in the attorney's personal trust account. The funds have now been consolidated in a cash collateral account subject to withdrawal only by the debtor's current attorneys.

5. Approximately a year before the filing of the case, the Minnesota Attorney General's office had discussions and correspondence with the debtor about the handling of consumers' deposits for motor vehicles ordered from the debtor. The import of those discussions was a desire on the part of the Attorney General that all such deposits be escrowed pending final delivery of the motor vehicles, although the Attorney General did not direct the creation of such an account. In response the debtor told the Attorney General that it was escrowing certain consumer deposits; however by the time that the case was filed the funds in the deposit account were exhausted and all other consumer deposits had been spent in the operation of the business.

6. Thus at that time of filing there were approximately 500 consumers who had ordered motor vehicles and paid deposits of $500.00 each to the debtor. The consumers who have made those deposits are probably the holders of pre-petition claims with perhaps a sixth priority status. 11 U.S.C. § 507(a)(6). Some buyers are apparently willing to purchase the cars for full price, in effect paying the $500.00 deposit again and retaining their claim for $500.00 in the bankruptcy case. However GMAC is unwilling because of past problems with the debtor to finance such purchases.

7. Prior to the filing of the case, various problems arose with the debtor's books which required correction by the debtor's accountants.

8. The debtor was losing money before the petition was filed and has lost money since the petition was filed.

9. The debtor sought the use of GMAC's cash collateral for the operation of the business but was unable to provide adequate protection for that use and therefore does not have the use of cash collateral. It is therefore unable to pay all of its expenses on an ongoing basis and there remain rent, data processing fees, taxes and heating bills of over $30,000.00 unpaid. In addition the debtor claims to have incurred over $60,000.00 in attorneys' fees since the case was filed and interest on GMAC's debt accrues at approximately $22,000.00 per month, not including its claim for attorneys' fees and expenses under its security agreement.

10. The debtor has commenced an action in district court against GMAC and General Motors Corporation (GM) accusing them of violating the Sherman Act, the Clayton Act, the Federal Automobile Dealers' Day in Court Act, the Racketeer Influenced and Corrupt Organizations Act, the Minnesota Antitrust Law of 1971, the Minnesota Motor Vehicle Sale and Distribution Regulations Act, the Minnesota Uniform Deceptive Trade Franchise Act, of fraud, misrepresentation, tortious interference with business relationships, and breach of contract.

11. The debtor made various pre-petition payments which may be subject to avoidance.

## CONCLUSIONS OF LAW

GMAC has made its motion pursuant to 11 U.S.C. § 151104(a) which provides that the appointment of a trustee may be ordered "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause:..." § 151104(a)(1). Alternatively, the appointment of a trustee can be ordered "if such appointment is in the interest of creditors, any equity security hold-

ers, and other interests of the estate. . . .". § 151104(a)(2).

■ Several reasons lead me to conclude that grounds exist for the appointment of a trustee. There has been either fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management. Which of these I am not prepared to say, but it is obvious that at least one of those grounds exist. The problems with the debtor's books, the pre-petition payments, the pre-petition and post-petition losses, the dissipation of consumer deposits and the problems arising shortly before the petition with GMAC's collateral all lead me to such a conclusion.

In addition, the stated causes are illustrations only and the Court is authorized to order the appointment of a trustee for any other cause or alternatively if the appointment is in the best interest of creditors or other interests of the estate. I think both of those standards are also met here. It is obvious that the relationship between the debtor's current principal and GMAC is strained at best, both as a result of pre-petition disputes and the newly filed district court litigation. I had hoped as a result of past hearings that some accommodation could be reached between the debtor and GMAC which would allow the debtor to fill pending consumer orders and have them financed by GMAC. It is my hope, although not a condition of this order, that putting an independent person in charge of the debtor's business operations and finances will lead to some arrangement for filling those consumer orders.

The debtor has expressed concern over the future conduct of the district court litigation if a trustee were appointed. As a legal matter, of course, a trustee would succeed to the debtor's claims and have the right to pursue them to the same effect as the debtor. *See* §§ 323 and 541. The debtor argues however that as a practical matter it is somehow not the same and perhaps the debtor is right. Regardless of the identity of the moving party, grounds for the appointment of a trustee have been proven. However, it does seem somehow unfair to allow GMAC to oust its opponent in the district court by having a trustee appointed. Therefore if I could somehow have a trustee appointed but allow the debtor to keep its district court cause of action, that is what I would do. However, § 1106 and the other provisions in chapters 1, 3, 5 and 7 which would apply to a Chapter 11 trustee do not seem to allow me to reserve such a right to the debtor. The appointment of a trustee is an all or nothing proposition.

■ However, Congress has provided a way to accomplish the same result. Section 151104(b) provides that if I do not order the appointment of a trustee, I may order the appointment of an examiner if "such appointment is in the best interest of creditors, any equity security holders, and other interests of the estate.". For all the reasons contained in my earlier discussion, I think that grounds also exist for the appointment of an examiner. Section 1106(b) specifies two specific duties of an examiner but goes on to say that the Court can order an examiner to perform any other duties of a trustee to the exclusion of the debtor in possession. Thus § 1106(b) allows me to give an examiner any or all of the duties of a trustee. Thus I can accomplish my intention by ordering the appointment of an examiner who will have all the powers and duties of a trustee other than the right to prosecute the district court litigation, and that is what I intend to do. Thus for all intents and purposes we will have a trustee albeit with the title of examiner. But as Juliet said, "What's in a name? That which we call a rose by any other name would smell as sweet." [1]

### ORDER

IT IS ORDERED:

1. The United States Trustee, after consultation with parties in interest, shall appoint, subject to the Court's approval, one disinterested person to serve as examiner in this case.

---

1. W. Shakespeare, Romeo and Juliet, II, ii, 43.

2. In addition to the duties specified in 11 U.S.C. § 1106(a)(3) and (4), the examiner shall perform all duties of a trustee except that the debtor in possession shall retain its right to maintain its claim against GMAC and GM in district court.

3. The examiner shall file a preliminary report of the examiner's investigation on or before March 4, 1985.