### In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.

**Bankruptcy No. 88–43.**

United States Bankruptcy Court,
D. New Hampshire.

March 22, 1989.

See also, Bkrtcy., 98 B.R. 120.

Richard Levin, Martin L. Gross, Concord, N.H., Don Willenburg, Los Angeles, Cal. for Public Service Co.

Joel Zweibel, New York City, J. Michael Deasy, Richard C. Gagliuso, Nashua, N.H., Michael S. Schneider, New York City, for Unsecured Creditors Committee.

Richard N. Tilton, Howard J. Berman, for Equity Committee.

Larry M. Smukler, Sr. Asst. Atty. Gen., Concord, N.H., Norman H. Stahl, Mark W. Vaughn, Daniel J. Callaghan, Manchester, N.H., for State of N.H.

Virginia A. Greiman, Wellesley Hills, Mass., U.S. Trustee.

George J. Wade, Barbara J. Gould, New York City, David J. Dunfey, Hampton, N.H., for Citicorp and Consolidated Utilities & Communications, Inc. (CUC).

Robert E. Ducharme, Manchester, N.H., for First Fidelity Bank and Amoskeag Bank.

John B. Nolan, Jeffrey G. Grody, Hartford, Conn., for Northeast Utilities Service Co.

Ted A. Berkowitz, John F. Pritchard, New York City, for First Fidelity Bank.

Daniel M. Glosband, Boston, Mass., for United Illuminating, New England Power, EUA Power Corp., Canal Elec. Co., Connecticut Light & Power Co., and Montaup Elec. Co.

Robert Drain, New York City, for Shearson, Lehman, Hutton, Inc.

John C. Ransmeier, Concord, N.H., for Vermont Public Service Corp.

Jack Lahey, for Business & Indus. Assn. of New Hampshire.

Victor Bass, Boston, Mass., for Maryland Nat. Bank.

Peter Baylor, Boston, Mass., for Bank of New England.

Robert A. Backus, Manchester, N.H., for Seacoast Anti–Pollution Group, Citizens within the 10–Mile Radius, Campaign for Rate–Payer's Rights.

Nathan M. Fuchs, New York City, for the U.S. Securities and Exchange Com'n.

Diane L. Donley, Washington, D.C., for the F.E.R.C. and Nuclear Regulatory Com'n.

## MEMORANDUM OPINION REGARDING APPOINTMENT OF EXAMINER

JAMES E. YACOS, Bankruptcy Judge.

On January 20, 1989 this court issued an Amended Order to Show Cause Re Appointment of Examiner (Court Document No. 1609). The court stated that "if the parties in interest cannot reach a consensual agreement on rate levels, this court will consider ... whether the appointment of a neutral, disinterested person with requisite expertise on rate impact questions should be ordered as conducive to fostering a consensual plan and negotiations...." The court further stated that, should the hearing on exclusivity extensions scheduled for February 22, 1989 "present a picture of continued deadlock with regard to rate levels", the court would consider at that time whether the appointment of an examiner should be authorized. The court then set this matter for briefing and hearing, and directed the United States Trustee "to inquire, on a preliminary basis only, as to the availability of any neutral and disinterested

person or persons who have the requisite expertise with regard to electric utility rate-setting matters, under both state and federal regulation, to perform the duties of an examiner...."

Responses to the aforementioned Order were filed by the Committee of Equity Security Holders (the "Equity Committee"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), First Fidelity Bank, N.A., New Jersey, on behalf of the Third Mortgage Indenture Trustees ("First Fidelity"), the State of New Hampshire (the "State"), Citicorp and Consolidated Utilities & Communications, Inc., owners of Third Mortgage Bonds ("CCUC"), Bank of New England, N.A., Indenture Trustee for PSNH's General and Refunding Mortgage Bonds ("BNE"), and by Public Service Company of New Hampshire ("PSNH").

The Equity Committee supports the appointment of an examiner. The Equity Committee states that "the impasse in plan negotiations strongly suggests that intervention by a neutral third party such as an examiner is desirable." The Equity Committee further suggests that "the examiner should have access to the data prepared by the financial advisors retained by the different parties in interest, including elasticity and demand studies." The Equity Committee states that "the appointment of an examiner with knowledge of utility rate-making, the needs of ratepayers and the actual circumstances surrounding PSNH and Seabrook could expedite the performance of the examiner's duties." The Equity Committee further states that "based on interviews held by parties in interest with prospective candidates for examiner, it is apparent that there are qualified individuals able to act as examiner and that appointment of such a person need not delay the reorganization process."

The Creditors' Committee opposes the appointment of an examiner at this time. The Creditors' Committee states that it "understands that the Court is considering the appointment of an examiner for two purposes—first, 'to foster negotiations by the parties' and second, to quantify the possible rate impact of the Seabrook plant." (Citing Transcript of hearing on January 23, 1989 to Renew Retention of Special FERC Counsel, pp. 37–8, and Examiner OSC, pp. 3–4.) The Creditors' Committee states that an examiner should not be appointed at this time, because "the purposes suggested for such an appointment are either premature, unavailing or unnecessary." The Creditors' Committee believes that such an appointment would be premature, because "until the Court decides the basic preemption issue involving § 1123(a)(5) of the Bankruptcy Code ... the positions of the parties with respect to ultimate possibilities will not have coalesced and mediation will not be effective." The Creditors' Committee suggests that the appointment of an examiner will probably be "futile", because of the "purely political approach of the State to negotiation" inasmuch as "the State says that as a political matter it cannot accept a meaningful rate increase because of voter displeasure." The Creditors' Committee also states that "the Debtor, the Creditors' Committee, the third mortgagees, and the Equity Committee are presently engaged in an effort to try to develop a unified counterproposal to the State ... [and that] intercession by an examiner is not required at this time."

First Fidelity opposes the appointment of an examiner. However, First Fidelity states that "if the Court determines to appoint an examiner, it should not do so without terminating exclusivity." First Fidelity states that "the present parties to this case, armed with the ability to file plans in competition with the Debtor, can negotiate reasonable rates with the State which would support a confirmable plan", that "the appointment of an examiner would inevitably delay the negotiation process", and that "the Court would retain the option of appointing an examiner if the present parties prove unequal to the task." In the event that an examiner is appointed, contrary to its position, First Fidelity states that the examiner "should not be authorized to retain professional assistance ... [because] the retention of such professionals would inevitably delay progress toward

the negotiation of agreed upon rates and would constitute an unnecessary additional expense to the Debtor's estate. Moreover, the parties to the proceeding will undoubtedly be prepared to permit the examiner access to the professionals who are knowledgeable about rate matters." First Fidelity notes that "the examiner would have the benefit of the Debtor's rate plan, prior State rate proposals, the Northeast Utilities' rate plan, the proposed rate plans prepared for the other parties in interest, including Citicorp and CUC, and the rate studies prepared by at least some constituents' advisors."

The State of New Hampshire opposes the appointment of an examiner, particularly if such appointment "must necessarily be accompanied by an extension of exclusivity." However, in the event that this court grants an extension of the Debtor's exclusivity period, the State "requests the mandatory appointment of an examiner pursuant to Section 1104(b)(2) of the Bankruptcy Code." The State suggests that "the best chance for breaking the current deadlock [in negotiations between the parties in interest] lies in opening this Chapter 11 case to the real and substantial third party plan proponents who are currently frozen out and who will continue to be frozen out by the Debtor for as long as exclusivity remains in effect, ... [and that] the allowance of third party plans with disclosure statements will enable the negotiating parties to see who the real players are and will foster a new phase of negotiations." The State suggests that "this new phase of negotiations can proceed, at least initially, without an examiner."

If an examiner is appointed, however, the State suggests that the examiner be given a role similar to that set forth in the case of *In re UNR Industries, Inc.,* 72 B.R. 789 (Bankr.N.D.Ill.1987). In *UNR,* the court described the examiner's role as follows:

> The primary role of the Examiner shall be to determine whether negotiations toward a consensual plan of reorganization are at an impasse. In making this determination, the Examiner shall have full power to inquire of various parties as to their positions in negotiations and to me-

diate any differences that exist. This mediative role is a necessary concomitant of the Examiner's determination regarding impasse. The Examiner must have the power to test the strength of each party's resolve and the assumptions underlying each party's position. The Examiner shall not seek to achieve any substantive result in negotiations, but rather to determine whether impasse exists and where appropriate, to facilitate the resolution of substantive differences.

*Id.* at 795–96. The State further urges that "an expeditious time schedule be established for the completion of the examiner's assigned tasks ... [and] that any examiner in this case must have a strong background in utility rate-setting."

CCUC opposes the appointment of an examiner at this time. CCUC states that "the appointment of an examiner is neither necessary, warranted, nor in the best interests of the estate." CCUC states several bases for its position, including: that "there is no cause sufficient to warrant the appointment of an examiner in this case"; that "the termination of exclusivity is the event needed in this case to break the logjam in negotiations, [and therefore] an examiner is ... unnecessary"; that "the appointment of an examiner ... could cause unnecessary and significant delay in the reorganization process"; and that "the appointment of an examiner could result in the accumulation of unnecessary and duplicative fees and expenses."

The Bank of New England supports the appointment of an examiner, if the court is presented with a candidate who possesses the qualifications described in this court's Amended Order to Show Cause Re Appointment of Examiner, dated January 20, 1989, and if, at that time, "negotiations among the Debtor, the State of New Hampshire and other parties remain deadlocked."

The Debtor, Public Service Company of New Hampshire, opposes the appointment of an examiner, and instead suggests that future negotiation among all of the major negotiating parties be done through con-

sensual mediation. PSNH requests this court to authorize that such a mediator be compensated at the expense of the estate. PSNH states several bases for its position, including: that "there have been no allegations of any of the kinds of activities described in section 1104(b) or 1106(a)(3) of the Bankruptcy Code that would justify the time and expense of an examination or investigation"; that "an examination into the negotiating positions of the parties would likely divert time and effort and delay the progress of this case and would not likely assist the Court in evaluating a settlement, if one were reached"; and that "an examiner should not be appointed to conduct 'forced mediation' of differences, because such a function is beyond the proper function of an examiner and because forced mediation is not by its nature conducive to effective mediation".

The court's Amended Order to Show Cause Re Appointment of Examiner was scheduled as part of a series of hearings on related matters that commenced on February 22, 1989. This matter was actually discussed in open court on February 24, 1989, at which time the court clarified its thoughts to some extent regarding the role of any examiner that it may appoint in this case—in effect narrowing the concept from some of the implications of the Order to Show Cause. [See Transcript, Ct.Doc. 1819, pp. 172–75, 180–81.] At that time, the court also received a report from the United States Trustee regarding her preliminary investigation indicating that there were available neutral and disinterested persons, with the experience and the requisite expertise regarding electric utility rate-setting matters under both state and federal regulation, to qualify them for appointment as examiner in this case. [See Transcript, Ct.Doc. 1819, pp. 161–68.]

This matter came up for further hearing on March 1, 1989, at which time the court heard arguments by all parties regarding the appointment of an examiner.[1] At the onset of the discussion, the Equity Committee made an oral motion to the court requesting the appointment of an examiner, regardless of whether or not the Debtor's exclusive period is extended. The United States Trustee also made an oral motion to the court requesting the appointment of an examiner, regardless of whether the Debtor's exclusivity period is extended. The State renewed its conditional motion for the appointment of an examiner *if* the Debtor's exclusivity period is extended. During the course of the oral arguments, the court further narrowed the concept of the functions of any examiner that it may appoint in this case. [See Transcript, Ct. Doc. 1886, pp. 4–8, 35–37, 47, 50, 51–53.]

## STATUTORY AUTHORITY

Section 1104 of the Bankruptcy Code, entitled "Appointment of trustee or examiner", provides in pertinent part in subsections (b) and (c) thereof the following:

\* \* \* \* \* \*

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

(c) If the court orders the appointment of ... an examiner, ... then the United States trustee, after consultation with parties in interest shall appoint, subject to the court's approval, one disinterested

---

1. By stipulation the entire record of the exclusivity hearings, February 22–24 and February 28, 1989, may be considered on the examiner issue as well.

person other than the United States trustee to serve as ... examiner ... in the case.

The Bankruptcy Code further provides for the duties of an examiner upon appointment. In pertinent part, section 1106 of the Bankruptcy Code provides that "An examiner appointed under section 1104(c) of this title shall perform the duties specified in [11 U.S.C. § 1106(a)(3) and (4) ]...." 11 U.S.C. § 1106(b). Pursuant to this cross-reference section 1106(a)(3) accordingly provides in effect that "except to the extent that the court orders otherwise, [an examiner shall] investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1106(a)(3).

■ The Debtor's strict interpretation of "examiner" as merely an investigator of fraud and other irregularities is unwarranted. The statutory language, providing that an examiner shall investigate "any other matter relevant to the case or to the formulation of a plan", is clearly broad enough to encompass the duties for which this court is considering the appointment of an examiner. 11 U.S.C. § 1106(a)(3). A number of courts have expanded the functions of an examiner in chapter 11 proceedings. *See, e.g., In re John Peterson Motors, Inc.,* 47 B.R. 551 (Bankr.D.Minn.1985) (examiner with all the powers and duties of a trustee appointed, in lieu of the appointment of a trustee, to enable debtor to continue as a party in a district court action); *In re Carnegie Intern. Corp.,* 51 B.R. 252 (Bankr.S. D.Ind.1984) (examiner authorized to bring suit on behalf of debtor); *In re Boileau,* slip op. (Bankr.S.D.Cal. Sept. 2, 1982) (discussed in *In re Boileau,* 736 F.2d 503 (9th Cir.1984) (examiner with expanded powers appointed by stipulation of the parties to avoid appointment of a trustee). In the *UNR Industries* and *Landscaping Services* cases cited below, examiners were appointed specifically to mediate and aid in breaking a deadlock in plan negotiations.

■ The Debtor has voiced a question as to any *sua sponte* power of this court to appoint an examiner. I believe that issue is not well taken. The court notes that oral motions for the appointment of an examiner were made at the hearing on oral argument regarding appointment of examiner on March 1, 1989, set forth above. However, assuming for the purposes of argument that no such motions were made, the court nevertheless believes it has the power to *sua sponte* appoint an examiner. *See In re UNR Industries, Inc.,* 72 B.R. 789 (Bankr.N.D.Ill.1987); *In re Landscaping Services, Inc.,* 39 B.R. 588 (Bankr.E.D.N.C. 1984).

## JUSTIFICATION

■ In this case the record justifies the appointment of an examiner. A showing has been made under section 1104(b)(1) of the Bankruptcy Code that the appointment is in the interests of this estate, and its various constituencies, in that there is need for investigation of matters relevant to the case and to the formulation of a plan. Moreover, the debtor's qualifying liquidated debts clearly exceed the $5,000,000 threshold figure set forth in section 1104(b)(2) of the Code.

The court has terminated exclusivity and there is every indication that there will be multiple plans of reorganization filed in this case. The court has created a 60-day negotiation period in which the parties are to achieve a consensual plan of reorganization if possible. The examiner will be useful in mediating that effort and in giving the court a report at the end of the 60-day period.

The court also needs aid in understanding some of the rather arcane concepts employed in the utility rate-setting regulatory world in order to properly perform its duties. The court is really caught between two complete legal systems and will need the examiner as an "interpreter" if nothing else, i.e., the court perforce has to act with the concepts coming not only from the reorganization world but also

from the utility regulatory world.[2] The court most emphatically will need the examiner for the disclosure statement hearings—particularly if there are competing plans with the respective proponents contesting the adequacy of the information in each others' disclosure statements. The examiner will be useful, either directly or through counsel, in literally "examining" witnesses from a neutral, disinterested standpoint so that the record is clear and understandable to "non-experts" including this court.

It is true, as the Debtor points out, that in the *UNR Industries* case cited above the court there appointed an examiner almost five years after the case was filed. However, in this case a clear impasse on rate level negotiations has occurred, multiple plans of reorganization are imminent, and there is a need as indicated above for an examiner to mediate during the 60–day period set forth in this court's order terminating exclusivity.

The court has considered the comments of a number of the parties to the effect that appointment of an examiner would be premature, or unnecessary, in the event of the termination of the debtor's plan exclusivity, and that in any event it would interject a further delaying factor into these proceedings. I conclude on the contrary that by virtue of the special provisions accompanying my denial of the debtor's Motion for extension of plan exclusivity the appointment of an examiner is essential to the proper effectuation of that order; and that the appointment of an examiner for the particular purposes developed in the hearings should not cause any unnecessary delay in the proceedings—assuming the selection of an individual having not only the requisite experience but sufficient agility and skill to take advantage of the considerable fund of data and analyses already developed by the parties in interest in the course of these proceedings to date.

With regard to the suggestion by the creditors' committee that the appointment of examiner is premature "until the court decides the basic preemption issue involving § 1123(a)(5) of the Bankruptcy Code" in the pending declaratory judgment action, [Adversary Proceeding No. 89–08] the appointment of an examiner as contemplated by the court would not be a party to that adversary proceeding nor would the development of that legal issue be material or relevant to the duties to be performed by the examiner.

### CONCLUSION

The court has directed the appointment of an examiner by the United States Trustee by a separate order specifying the duties to be performed by the examiner and providing that the scope of activity of the examiner shall not be enlarged except upon an appropriate motion and notice and hearing thereon. The key functions of the examiner to be appointed are specified in the order. The key functions of the examiner set forth in the order shall however be narrowly construed in accordance with the referenced comments of this court during the course of the hearings on the appointment of an examiner—which comments have been cited specifically from the transcripts earlier in this opinion. Other comments by the court during the course of the hearings shall not be deemed material.

The examiner to be appointed should be an individual rather than a firm. Any necessary clerical aid and reimbursement of expenses will be authorized by supplemental order, to be submitted by the examiner and concurred in by the United States Trustee. The examiner will not be authorized to employ his or her own financial advisors, analysts or other technical professionals, inasmuch as it is a contemplation of the court that the examiner should be able to obtain such professional aid as may

---

**2.** The complex and sometimes slippery concepts encountered in utility rate regulation is well documented in this record. [See Transcript, Ct.Doc. No. 1850, pp. 59–64, 122–131, 135–137, 176–186, 188–196.] Certain of these passages also illustrate the fearless but not always fruit-ful efforts of the undersigned judge to attempt to question the expert witnesses on these subjects. A few of the passages also illustrate that even the experts do not always agree as to the meaning and scope of the central terminology.

be necessary from the various professionals already employed by court order in this estate. In the event that there is any dispute in the making available of such information to the examiner, the court will determine any such dispute or refusal to supply data and information upon an appropriate expedited hearing as may be necessary.

Notwithstanding the foregoing, and the court's comments during the course of the hearings, the court will consider the appointment of *an attorney* experienced in bankruptcy reorganization work to serve as counsel to the examiner for the limited purpose of advising the examiner as to the import of the court's orders and rulings in this case; to advise as to the context and ramifications of hearings in the case as they may develop; to aid in the preparation of such pleadings and reports as may be necessary on behalf of the examiner; and to aid in the examination of witnesses at court hearings as the examiner and the court may direct. The court will consider the appointment of an attorney for such purposes upon request by the examiner, concurred in by the United States attorney, on an expedited basis as may be appropriate. Such appointment, if requested, shall be of an individual attorney and not a law firm.

For all of the foregoing reasons, the court has concluded that an examiner should be authorized in these proceedings and a separate order to that effect has been entered. Notwithstanding the comments of the court during the course of the aforesaid hearings to the effect that a further hearing would be held to consider the approval of the individual selected by the United States Trustee, the court will act ex parte upon the selection made by the United States Trustee but contemplates will provide that the United States Trustee will first endeavor to obtain general consent as to the individual to be selected.