**In re LANDSCAPING SERVICES, INC., Debtor.**

Bankruptcy No. S–83–00038–5.
ID No. 56–0903011.

United States Bankruptcy Court,
E.D. North Carolina.

May 18, 1984.

A.P. Carlton, Jr., Raleigh, N.C., for Landscaping Services, Inc.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

This matter is before the court to consider confirmation of the debtor's plan of reorganization. No objections were filed and no one opposed confirmation at the hearing in Raleigh, North Carolina on May 2, 1984. For the reasons set forth herein, the plan will not be confirmed at this time, the confirmation hearing will be continued and a show cause order will be entered as to why an examiner should not be appointed to develop information needed by the court to determine if the plan meets the confirmation requirements of 11 U.S.C. § 1129.

## FACTS

Landscaping Services, Inc. is a debtor-in-possession (11 U.S.C. § 1101(1)), having filed a voluntary petition under chapter 11 of the Bankruptcy Code on January 5, 1983.

The debtor, incorporated in 1968, engaged in the contract commercial landscaping and grading business. In 1978, the debtor began to experience financial difficulties and since that time the debtor has been insolvent (11 U.S.C. § 101(26)). Operations ceased on November 1, 1983.

The debtor's schedules reflect taxes due of $16,800, secured debts of $159,300, unsecured debts of $131,600 and assets of $111,-800.

The debtor's stock is owned by Charles R. Fish (51%), and Edward W. Poole (49%). Mr. Fish, the debtor's president, is the debtor's landlord; he also owns C.R. Fish Equipment Corporation which leased equipment to the debtor. A corporation named Fish Enterprises, Inc., which may or may not be owned by Mr. Fish, rented equipment and provided material and supplies to the debtor.

In December of 1981, one year and one month prior to the debtor's chapter 11 petition, C.R. Fish Equipment Corporation was given a security interest in virtually all of the debtor's assets to secure an antecedent debt in the amount of $142,013.15; the outstanding balance of this secured indebtedness is now $177,800.

At the time of the petition, C.R. Fish Equipment Corporation had contingent claims against the debtor for bonded contracts and a $10,446.96 bank loan, both of which C.R. Fish Equipment Corporation had guaranteed. C.R. Fish, individually, also had a contingent claim for payroll withholding taxes in the amount of $6,946.17 for which, as president of the debtor, he would be liable.

An application was made requesting that C.R. Fish Equipment Corporation be given a security interest in the debtor's assets to secure advances to be made by C.R. Fish Equipment Corporation to discharge the debtor's (and C.R. Fish Equipment Corporation's), liability for bonded contracts. The application was denied.

The debtor also applied to the court for permission to make pre-confirmation payments to the Internal Revenue Service to avoid penalties which would be assessed against Mr. Fish. The application was withdrawn.

Since the filing of this chapter 11 case, Mr. Fish received $5,850 in salary, $7,071.06 for rent, $450 for straw and $9.95 for equipment parts. C.R. Fish Equipment Corporation received $5,853.55 for equipment rental and Fish Enterprises, Inc. received $5,853.55 for equipment and supplies. C.R. Fish Equipment Corporation has a post-petition claim in the amount of $2,055 and Fish Enterprises, Inc. has a post-petition claim in the amount of $7,000.

The debtor's plan calls for the payment of administrative expenses and priority tax

claims. The secured claims (secured by equipment) of Ford Motor Credit Company and Capital City Leasing Company are to be assumed by C.R. Fish Equipment Corporation which will take title to the equipment.

C.R. Fish Corporation's secured claim will be satisfied in connection with a merger between the debtor and C.R. Fish Equipment Corporation.

The proposed plan provides that unsecured creditors will receive a *pro rata* distribution of "remaining funds" which, apparently, will be the proceeds of a yet uncollected judgment in the approximate amount of $32,000 against the 49% owner, Edward J. Poole.

The shareholders will receive nothing under the proposed plan.

Essentially, the plan will give Mr. Fish's company all of the debtor's assets, less the judgment, free of unsecured debt. Additionally, the successor company will have the benefit of a tax loss carry forward in the amount of $250,000. Mr. Fish testified that he intends to continue to operate the business after the merger.

The requisite acceptances were obtained (11 U.S.C. § 1126), but not all unsecured creditors affirmatively accepted the plan.[1]

This case suffers from a problem which plagues many chapter 11 cases—unsecured creditor apathy. There has been no active creditors' committee, no creditor scrutiny of the debtor's operations, and no creditor examination of the debtor's relationship with Mr. Fish and his companies. There has been no request for an examiner or a trustee.

## DISCUSSION AND CONCLUSIONS

■ Even in the absence of creditor objections, the court has an independent duty to determine that the confirmation requirements of 11 U.S.C. § 1129 are met and the duty to ascertain the debtor's "good faith." *In re Economy Cast Stone Company*, 8 BCD 807, 16 B.R. 647 (Bkrtcy.ED VA 1981). Since all of the unsecured creditors did not affirmatively accept the debtor's plan, the court must determine that the non-accepting creditors will receive more through the plan than they would receive in a liquidation under chapter 7 (11 U.S.C. § 1129(a)(7)(A)(ii)). If a trustee could set aside any of the many "insider" transactions, the unsecured creditors might, perhaps, receive more in a chapter 7 case and the requirement of 11 U.S.C. § 1129(a)(7)(A)(ii) would not be met. Also, the plan could not be confirmed if the case was not proposed in good faith (11 U.S.C. § 1129(a)(3)).

In the case before the court, Mr. Fish (or one of his companies) is the debtor's primary stockholder, its president, its landlord, its equipment lessor, its materials supplier, its primary secured creditor (by virtue of a lien taken just one year and one month prior to bankruptcy when the debtor was insolvent), its bond guarantor, its bank loan guarantor, its tax co-obligor and its proposed purchaser. The circumstances clearly compel further inquiry.

■ Although 11 U.S.C. § 1104 appears to require "a request of a party in interest" as a pre-condition to the appointment of a trustee or examiner,[2] the court is not limited in its ability to appoint an examiner or a trustee where the appointment is necessary or appropriate to carry out the provisions of the Bankruptcy Code. (11 U.S.C. § 105(a)). 11 U.S.C. § 1104(a) sets forth when the court *must* appoint a trustee or an examiner,[3] but does not limit the court's broad power under 11 U.S.C. § 105.

■ The court has the "inherent power and duty to control its docket, to preserve

---

1. This is so even when the acceptances filed by C.R. Fish and his companies are disregarded. Those included: Fish Enterprises, Inc.—$1,497.08; C.R. Fish $4,928.94; and, C.R. Fish Equipment Corporation $19,079.37, $10,446.96, $177,800, and $13,822.28.

2. *In re Gurwitch,* 6 BCD 264, 37 B.R. 513 (Bkrtcy. SD FL 1980) and *In re Mandalay Shores Co-op Housing Association,* 22 B.R. 202 (Bkrtcy. MD FL 1982).

3. *In re Hotel Associates, Inc.,* 7 B.R. 130 (Bkrtcy. ED PA 1980).

its integrity, and to insure that the legislation administered by the court will accomplish the legislative purpose." *In re Nikron Inc.*, 10 BCD 335, 337, 27 B.R. 773 (Bkrtcy.ED MI 1983). In a recent decision from the District of Maryland, bankruptcy judges were admonished to "intensify their scrutiny" of chapter 11 cases. *Furness v. Lilienfield*, 35 B.R. 1006 (DC MD 1983).

In a case such as the case before the court, with no active creditors' committee and no United States Trustee, when there is a clear need for an independent investigation to develop information which is essential to the court's evaluation of the confirmation requirements and the debtor's "good faith," the court need not stand helplessly by hoping that a party in interest might ask for the appointment of an examiner.[4] If the appointment of an examiner is necessary, the court may itself initiate the request.[5]

The debtor was given the opportunity to contest the appointment of an examiner at the confirmation hearing. Creditors and other parties in interest shall be notified that they shall have ten (10) days to request a hearing at which they may show cause why an examiner should not be appointed. The confirmation hearing shall be continued to a date set by the Clerk of the United States Bankruptcy Court for the Eastern District of North Carolina.

SO ORDERED.

---

4. The court could appoint an expert witness under Rule 706 of the Federal Rules of Evidence, but he or she would lack the investigative authority given to an examiner.

5. See *In re Nikron, Inc.*, 10 BCD 335, 27 B.R. 773 (Bkrtcy. ED MI 1983) and *In re Gusam Restaurant Corporation*, 10 BCD 1320, 32 B.R. 832 (Bkrtcy. ED NY 1983) in which the court initiated the conversion of a case from chapter 11 to chapter 7.