### In re HOOSIER HI-REACH, INC., Debtor.

### Bankruptcy No. IP83–74RA S.

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

April 22, 1986.

---

Thomas N. Eckerle, Deborah J. Caruso, Dale, Eckerle & Eke, Indianapolis, Ind., for debtor.

George Hopper, Indianapolis, Ind., for Mark Credit Corp.

## ENTRY ON OBJECTIONS TO CONFIRMATION OF AMENDED PLAN

### I. HISTORY OF THE PROCEEDING

NICHOLAS W. SUFANA, Bankruptcy Judge. .

Hoosier Hi-Reach, Inc. ("Hoosier"), the debtor in this Chapter 11 proceeding, filed its Amended Disclosure Statement and Amended Plan of Liquidation ("Amended Plan" or "Plan") on August 7, 1985. The

Amended Disclosure Statement was approved on October 10, 1985.

On December 2, 1985, Mark Credit Corporation ("Mark"), an unsecured claimant, filed its objections to the Amended Plan.

At the confirmation hearing on the Amended Plan on December 9, 1985, the Court informed Hoosier and Mark that the Plan had been accepted by creditors. Mark then requested an opportunity to submit a brief in support of its objections to confirmation. Both parties have since briefed the issues. The Court, having reviewed the record and the evidence, having considered the arguments of counsel, and being duly advised, now makes the following Entry, which will constitute the findings of fact and conclusions of law required by Bankruptcy Rule 9014.

## II. DISCUSSION

### A. Introduction

The Amended Plan divides claims into four classes. Class I claims are administrative claims with priority of payment, and the Amended Plan proposes to pay such claims in cash and in full when allowed by this Court.

Class II claims are tax claims and other non-administrative priority claims, which the Amended Plan also proposes to pay in cash and in full when allowed by the Court. In its Disclosure Statement, Hoosier contends that all such claims have already been paid.

The third class of claims consists of all creditors of Hoosier who are not included in Classes I or II. The Amended Plan provides that these Class III claims will be paid a dividend in an amount equal to their respective pro-rata share of all funds on hand in Hoosier's bank account and collected from Hoosier's accounts receivable, after payment to Classes I and II. In addition, Class III claimants will be paid a dividend equal to their respective share of forty per cent (40%) of net proceeds received from an action which Hoosier intends to file against Mark, a former employee of Hoosier, and others for actions allegedly taken by those prospective defendants before the Chapter 11 was filed.

The fourth and final class consists of the three equity interest holders of Hoosier. In exchange for funding the litigation against Mark, this class would receive sixty per cent (60%) of net proceeds recovered from the action against Mark and the others.

The lawsuit which Hoosier's Plan relies upon so heavily had not been filed as of the date the parties submitted briefs. A similar action had been pending in this Court as an adversary proceeding, but the parties dismissed it on August 22, 1983, with the stipulation that the suit would be refiled in the District Court.

Mark has raised several objections to the Amended Plan, all of which focus on the fact the Plan divides the proceeds from the lawsuit in such a manner that the interest holders in Class IV may receive funds pursuant to the Plan before the creditors in Class III are paid in full. The first objection asserts that the Amended Plan violates the absolute priority rule contained in Section 1129 of the Code, precisely because of the possibility that Class IV will receive funds before Class III is paid in full. The second objection alleges that the Amended Plan does not satisfy the best interests of creditors test contained in Section 1129(a)(7) because Hoosier has failed to establish that Mark and Shell Oil Co., the two creditors who rejected the Plan, will receive more through the Plan than they would through a Chapter 7 liquidation. Finally, Mark contends the Plan has not been filed in good faith, as required by Section 1129(a)(3). Each of these objections will be considered in turn.

### B. Applicability of the Absolute Priority Rule

Mark has suggested that the Plan is not fair and equitable because it violates the absolute priority rule. However, that rule is inapplicable to this Plan because all classes have been deemed to accept the Plan.

■ The "fair and equitable" requirement is contained in and amplified by Section 1129(b). One of the ways a plan's proponent can establish that the plan is fair and equitable is by demonstrating that the plan satisfies the absolute priority rule, which requires as to unsecured creditors who will not be paid in full no junior claim will receive anything under the plan. Section 1129(b)(2)(B)(ii). Mark asserts that because the shareholders may receive funds under Hoosier's Plan, it does not satisfy the absolute priority rule and therefore is not "fair and equitable."

However, Section 1129(b) only comes into play when a plan does not satisfy Section 1129(a)(8), that is, when an impaired class has not accepted the plan. Here, as noted, Class III has been deemed to accept the Plan, despite the rejections of Mark and Shell Oil Co., because the requirements of Section 1126(c) have been satisfied. Therefore, the Plan need not satisfy the absolute priority rule or otherwise be fair and equitable under Section 1129(b)(2).

In its brief, Mark suggests that Section 1129(a)(7) implicitly contains the absolute priority rule. Mark refers to the comments found in Senate Report No. 95–989, U.S. Code Cong. & Admin.News 1978, pp. 5787, 5912, which read:

> Paragraph (7) provides that in the case of a public company the court shall confirm the plan if it finds the plan to be fair and equitable. . . .

However, those comments refer to S. 2266, the bankruptcy reform bill which first appeared in the Senate. That bill contained section 1130 on confirmation, which listed in paragraph (7) the following requirement for confirmation:

> (7) In the case of a public company the court finds the plan fair and equitable and the plan either has been accepted by each class of claims or interests as provided in section 1126 or satisfies the requirements of subsection (b) of this section.

The paragraph (7) found in S. 2266 did not make it into the final draft of the Code. The House version, which did not include the absolute priority rule except under 1129(b), prevailed. Representative Edwards, in explaining the compromises reached between S. 2266 and H.R. 8200, stated that

> Section 1129(a)(8) of the House amendment adopts the provision taken in the House bill which permits confirmation of a plan without resort to the fair and equitable test if the class has accepted the plan or is unimpaired under the plan.

Based upon the legislative history, this Court concludes that Congress did not intend Section 1129(a)(7) or any other part of 1129(a) to be interpreted as requiring adherence to the absolute priority rule. Therefore, Mark's objection on this ground is overruled.

### C. Satisfaction of the Best Interests of Creditors Test

Although Hoosier's Amended Plan need not follow the absolute priority rule, it still must meet the best interests of creditors test contained in 1129(a)(7). To satisfy that section, Hoosier must demonstrate that Mark and Shell Oil Co., who have not accepted the Plan, will receive property of a value not less than what they would have received if Hoosier were liquidated under Chapter 7. 1129(a)(7)(A)(ii).

■ Hoosier, as the proponent of the Plan, has the burden of establishing that the Plan satisfies 1129(a)(7). *In re Featherworks Corp.*, 25 B.R. 634 (Bankr.E.D.N.Y.1982). Hoosier asserts that Mark and Shell Oil Co. would receive nothing under Chapter 7, because all funds on hand would go to the claimants in Classes I and II, and because the Chapter 7 trustee will not pursue the action against Mark but would abandon it. Hoosier offered no proof that in fact the claims in Classes I and II will consume all the funds on hand and the amounts collected from accounts receivable. Nor has Hoosier supported its assumption that the trustee would abandon the action against Mark.

The *Featherworks* case illustrates the type of evidence the plan proponent must show in order to satisfy 1129(a)(7). There,

an unsecured creditor suggested that the debtor's real estate was worth more than the debtor said, and because of the equity unsecured creditors would receive more upon liquidation than they would under the plan. The debtor's only evidence as to the value of the real estate was an appraisal conducted two years earlier during attempts to settle a lawsuit. The age and suspect purpose of the appraisal caused the court to reject it as probative evidence of value, and as a result the debtor failed to meet its burden of establishing that the plan complied with 1129(a)(7).

■ Hoosier has failed to establish that Mark and Shell Oil Co. would receive less through Chapter 7 than they would through the Amended Plan. Hoosier presumes that Classes I and II, which would have priority if this case were converted, would receive the bulk of the payments from the funds on hand and the receivables collected by the trustee. Yet the Class I claims are undetermined and no estimate has been given. And Hoosier in the closing paragraphs of its Disclosure Statement suggests that all Class II claims have been paid in full.

This Court doubts whether Hoosier can ever establish that a Chapter 7 trustee would abandon the claim against Mark. Hoosier definitely cannot do so with the dearth of information before this Court. What has been revealed only leads this Court to ask: Why has the action not been refiled in the District Court? If the claim against Mark and others is so viable, why are the interest holders unwilling to fund the litigation without the challenged Plan proviso, since, if the action may be worth $200,000 as stated in the Disclosure Statement, all creditors would be paid in full and a substantial surplus would accrue to those interest holders?

The burden imposed by 1129(a)(7) must be met with evidence, not assumptions. This Court cannot say with certainty that the Plan satisfies Section 1129(a)(7), and therefore the Amended Plan will not be confirmed.

## D. The Good Faith Test

Because the Court has determined that the Plan cannot be confirmed because it fails to satisfy Section 1129(a)(7), this Court need not now determine whether the good faith test of Section 1129(a)(3) has been met. However, such a determination reveals additional grounds for denying confirmation.

■ The good faith requirement of 1129(a)(3) is met if the plan establishes a reasonable likelihood that it will achieve a result consistent with the purposes and objectives of the Bankruptcy Code. *Matter of Madison Hotel Associates,* 749 F.2d 410 (7th Cir.1984). Liquidating plans are permissible, and allow the debtor to liquidate its property in a reasonable manner. *In re Quality Sign Co.,* 51 B.R. 351 (Bankr.S.D. Ind.1985). However, even a liquidating plan must aim toward a result consistent with the purposes and objectives of Chapter 11.

■ Two of those objectives are the expeditious resolution of disputes and speedy payment to creditors. Hoosier's Plan falls far short of meeting those objectives. After three years in Chapter 11, Hoosier now wants an additional six months to collect accounts receivable. Disclosure Statement, p. 13. Hoosier's representation that it will make payment to creditors immediately upon confirmation is thus qualified by the fact Hoosier has not yet collected all the funds. Further, Hoosier expects to take an additional year to complete the action against Mark. Disclosure Statement, p. 16. Such a prediction seems optimistic since at the time of the confirmation hearing the lawsuit had not been refiled. Meanwhile, the creditors wait.

The Plan is also misleading. Hoosier states on page 16 of its Disclosure Statement that "the bankruptcy estate will not be funding the Mark Action. All expenses and attorneys fees will be paid by the shareholders." But the Plan only proposes to pay *net* proceeds from the litigation to Classes III and IV. The Plan defines "net Proceeds" as all proceeds less payment of

attorney fees and reimbursement to the shareholders for all sums advanced to file and prosecute the action against Mark. In essence, the estate is partially funding the litigation. Instead of receiving 40% of gross proceeds, Class III creditors must wait while the shareholders are first completely reimbursed for their expenses. The bankruptcy estate alone bears the risk that recovery will be less than expenses. The shareholders are using their money up front, but they will be reimbursed by the estate. By contrast, if the Chapter 7 trustee were to pursue the action, the creditors would bear the risk and reap the rewards for themselves first, without sharing the recovery with the interest holders. Perhaps this revelation only strengthens the argument that the Plan is not in the best interests of creditors, but the attempt to portray the interest holders as placing their personal resources at risk for the good of other creditors suggests a lack of good faith.

 Hoosier contends that Mark is hardly one to argue a lack of good faith when it is Mark who potentially stands to benefit from the denial of confirmation. But the benefit to Mark is purely speculative, since the action against Mark may still be pursued. Further, even if Mark had not objected, this Court has an independent duty to ascertain that all the provisions of 1129(a) have been satisfied. *In re Landscaping Services, Inc.*, 39 B.R. 588 (Bankr. E.D.N.C.1984). Pursuant to this independent duty, this Court has considered Hoosier's Amended Plan, and now determines that it does not show sufficient likelihood of achieving a result consistent with the objectives of the Code, and therefore it does not satisfy Section 1129(a)(3) and cannot be confirmed.

### III. CONCLUSION

Based upon the foregoing, it is hereby ORDERED, ADJUDGED, AND DE-CREED that Confirmation of the Amended Plan Of Liquidation filed by Hoosier Hi-Reach, Inc. is DENIED.