**In re Charles La Grant KEMP, Debtor.**

**No. 190–03289–A–11K.**

United States Bankruptcy Court,
E.D. California.

Nov. 4, 1991.

D. Max Gardner, Noriega & Alexander, Bakersfield, Cal., for debtor.

Michael D. Warner, Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for creditor Sattley.

James Snyder, Office of the U.S. Trustee, Fresno, Cal.

## MEMORANDUM OPINION

RICHARD T. FORD, Bankruptcy Judge.

The hearing on the Confirmation of First Amended Chapter 11 Plan of Reorganization came on regularly before the above-entitled court on October 23, 1991.

An objection to confirmation was filed by creditor Carrie Sattley. No other written objections were filed.

The debtor was represented by D. Max Gardner of the law firm Noriega & Alexander. Creditor Sattley was represented by Michael D. Warner of the law firm Robinson, Diamant, Brill & Klausner. The U.S. Trustee's Office was represented by James Snyder, who interposed an oral objection to confirmation.

## DISCUSSION

A Plan of Reorganization may be confirmed if each of the requirements set forth in 11 U.S.C. § 1129(a) are satisfied. The proponent has the burden of proving to the Court that each requirement is satisfied. If all of the requirements except 11 U.S.C. § 1129(a)(8) are satisfied, then the Court may confirm a Plan under § 1129(b) if the debtor proves that the Plan is not discriminatory and if it is fair and equitable.

### 11 U.S.C. § 1129(a)(3) "GOOD FAITH"

Section 1129(a)(3) requires that a plan have been "proposed in good faith and not by any means forbidden by law." Although the term "good faith" is left undefined by the Code, "[i]n the context of a Chapter 11 reorganization ... a plan is considered proposed in good faith 'if there is a reasonable likelihood that the Plan will achieve a result consistent with the standards prescribed under the Code.'" *Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1315 (8th Cir.1987) (quoting *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr.S.D.N.Y.1984)); *accord Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167, 172 (Bankr. 9th Cir.1988) ("Good faith requires that a plan will achieve a result consistent with the objectives and purposes of the Code.")

■ Undoubtedly, "[t]he bankruptcy judge is in the best position to assess the good faith of the parties' proposals." *Jasik v. Conrad (In re Jasik),* 727 F.2d 1379, 1383 (5th Cir.1984); *accord In re Stolrow's, Inc.,* 84 B.R. at 172. "According to the good faith requirement of section 1129(a)(3), the court looks to the Debtor's plan and determines, in light of the particular facts and circumstances, whether the plan will fairly achieve a result consistent with the Bankruptcy Code." *In re Madison Hotel Associates,* 749 F.2d 410, 425 (7th Cir.1984) (distinguishing between "the good faith that is required to *confirm a plan* under section 1129(a)(3) and the good faith that has been established as a *prerequisite to filing* a Chapter 11 petition for reorganization." (emphasis in original)); *accord In re Stolrow's, Inc.,* 84 B.R. at 171–72.

■ Two of the primary objectives of Chapter 11 are "the expeditious resolution of disputes and speedy payment to creditors." *In re Hoosier Hi–Reach, Inc.,* 64 B.R. 34, 38 (Bankr.S.D.Ind.1986).

The Court does not question good faith at the time of filing of Debtor's Petition, only that the Plan is not filed in good faith.

■ The Court finds that a payment of $4,000 per month to the debtor's ex-wife for the next ten years to satisfy her $300,000 judgment does not comply with the *Stolrow's* decision cited above, which provides that the Plan should achieve a result consistent with the objectives and the purposes of the Code. In addition, as set forth in the *Hoosier* case, *supra,* the Plan does not meet the objectives of Chapter 11 calling for speedy payment to creditors and an expeditious resolution of disputes.

According to the Debtor, he receives a salary of $38,000 per year from E.L. Cummings, Inc., and $3,500 per month from Kemp Enterprises. In addition, Mr. Kemp testified that his solely owned corporation, E.L. Cummings, has a net income of $120,000 per year. He expends approximately $20,000 for expenses. This totals approximately $180,000 of net income available to Mr. Kemp, and he has offered only to pay $48,000 per year to his ex-wife on the judgment she received in exchange for all of the assets that the debtor received.

The Court finds, based upon the facts brought out in the declarations and testimony in court, that the debtor is capable of making payments substantially higher than he has offered in his Plan. That information is corroborated by the debtor's son/accountant.

In addition, the Court's findings reference feasibility are hereby incorporated herein reference bad faith.

### 11 U.S.C. § 1129(a)(11) "FEASIBILITY"

Section 1129(a)(11) requires the Court to find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor ..." The Second Circuit has explained that:

"Under the test of feasibility, the court 'views the probability of actual performance of the provisions of the plan. Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.' 9 *Collier on Bankruptcy,* at 1139."

*Chase Manhattan Mortgage and Realty Trust v. Bergman (In re Bergman),* 585 F.2d 1171, 1179 (2d Cir.1978) (applying feasibility test to Chapter XII plan under the former Bankruptcy Act)[1]; *see also Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),* 761 F.2d 1374, 1382 (9th Cir.1985) (" 'The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes ...' " (quoting 5 *Collier on Bankruptcy,* ¶ 1129.02[11] at 1129–34 (15th ed. 1984))).

---

1. "Section 1129(a)(11) is derived from feasibility tests contained in ... the Bankruptcy Act" and "[t]he cases under the Bankruptcy Code have applied section 1129(a)(11) in a manner which is consistent with the precode cases." 5 Collier on Bankruptcy, ¶ 1129.02[11] at 1129–36.11 and 1129–36.13 (15th ed. 1989 rev.).

■ It must be emphasized, however, that "[g]uaranteed success in the stiff winds of commerce without the protection of the Code is not the standard under § 1129(a)(11) ... All that is required is that there be reasonable assurance of commercial viability." *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986); *accord Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 843 F.2d 636, 649 (2d Cir.1988) ("As the Bankruptcy Court correctly stated, the feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1364 (9th Cir.1986) (holding that feasibility requirement is satisfied by showing of "reasonable probability of success.").

■ In determining whether a plan is "feasible" within the meaning of § 1129(a)(11), courts have identified the following factors as pertinent:

"the prospective earnings of the business or its earning power; the soundness and adequacy of the capital structure and working capital for the business which the debtor will engage in post-confirmation; the prospective availability of credit; whether the debtor will have the ability to meet its requirements for capital expenditures; economic and market conditions; the ability of management, and the likelihood that the same management will continue; and any other related factors which would materially reflect on the company's ability to operate successfully and implement its plan."

*In re Texaco, Inc.*, 84 B.R. 893, 910 (Bankr. S.D.N.Y.) (quoting *In re Prudential Energy Co.*, 58 B.R. 857, 862, 863 (Bankr. S.D.N.Y.1986)), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y.1988).

The Supreme Court also acknowledged that the trier of fact should be accorded considerable discretion in determining feasibility because "[t]he extent and method of inquiry necessary for a valuation based on earning capacity are necessarily dependent on the facts of each case." *Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510, 527, 61 S.Ct. 675, 685, 85 L.Ed. 982 (1941).

■ The Court finds, based upon the evidence introduced at the time of hearing, as follows:

1. The Debtor has no written contract with any of his clients for trucking.

2. All of the Debtor's business is subject to termination at will.

3. The Debtor has the absolute right to sell any or all of his assets or the corporation's assets and "no one can stop him from doing so."

4. The Debtor alleges that the creditor is offered protection by the Plan such that if the Debtor defaults, she will be able to resort to her state court remedies in executing on her security, to wit the stock of E.L. Cummings, Inc. To the Court, this is no protection at all after considering the Debtor's ability and right to sell any and all assets at any time.

5. There is nothing offered to this objecting and non-consenting creditor to protect the continuing value of the Debtor's assets and business from his arbitrary decisions.

6. The Debtor is age 65 and although he is in perfect health according to his testimony, it common knowledge that people 65 and over certainly have more health risk factors than someone of a lesser age.

7. The Debtor and his accountant both testified to his income and available profits as stated above. None of these figures correspond to the operating reports currently on file with this Court.

8. Debtor's business judgment appears to be that he does not review any of his statements or bills received either in his corporation business, his personal business, or his personal affairs.

9. The Debtor states that for 25 years he was involved in a successful business. However, in 1990, he lost approximately $150,000 for three reasons. It was a bad agricultural year, there was a freeze which caused a considerable loss, and trucking expenses including fuel increased. No evi-

dence was presented that any of those factors have changed for the better.

10. Debtor admits in his Disclosure Statement that the trucking business is an "uncertain" business.

It is the Court's opinion that since the Debtor has failed to prove that the Plan was filed in good faith and that the Plan is feasible, confirmation must be denied.

For purposes of this decision, and for the benefit of counsel for the Debtor and any reviewing body, even if one should disagree with the above decision and find good faith and feasibility, the Plan would fail under the 1129(b) cram-down provisions.

The Court in the matter of *Rochem, Ltd., et al.,* 58 B.R. 641, 14 C.B.C.2d 834 (D.N.J.1985) stated that to determine whether a plan "discriminates unfairly" against a creditor under 1129(b)(1), the Court must inquire as to (1) whether the discriminating treatment has a reasonable basis; (2) whether the debtor could carry out a plan without the discrimination; (3) whether the plan and the discriminatory treatment are proposed in good faith; and (4) the treatment of the class discriminated against.

This Plan fails under the first element of the *Rochem* case, in that the proposed treatment to the objecting and non-consenting creditor is $48,000 per year, although there is a much higher available income.

In response to the second element of the *Rochem* case, this Debtor could propose a Plan with much less discrimination to the creditor.

The third element also fails in that there is no proposal for a speedy payment or quick resolution of the dispute with the non-consenting creditor.

Fourth, this creditor is harshly treated compared to all other creditors in the case.

Therefore, this Plan does not meet the cram-down requirements of being nondiscriminatory.

Is it fair and equitable under 1129(b)(2)? For all of the reasons and findings the Court has made reference bad faith, fea-

sibility, and whether or not it is discriminatory, apply to the fair and equitable doctrine. The Court concludes that the Plan fails on this element also.

### CONCLUSION

For all of the reasons set forth above, the Court finds that the Plan is filed in bad faith and that the Plan is not feasible. In addition, the Court finds that the Plan is discriminatory and not fair and equitable. Accordingly, confirmation is DENIED.