In the matter of **FIRST AMERICAN HEALTH CARE OF GEORGIA, INC.** and its wholly owned subsidiaries listed on Exhibit "A", Debtors.

Bankruptcy Nos. 96–20188 through 96–20218.

United States Bankruptcy Court, S.D. Georgia, Brunswick Division.

March 12, 1996.

Kathleen Horne, Savannah, GA, for debtors.

### ORDER FOR THE APPOINTMENT OF AN EXAMINER

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

The Debtors' Chapter 11 cases were filed on February 21, 1996. Simultaneously with

the filing of the case, Debtors filed a Complaint for Turnover against the United States, applications for appointment of various attorneys to represent Debtors, and an application to employ Chamberlain and Cansler, Inc., as independent managers. Hearings to consider interim and emergency relief as to all matters concluded on February 22, 1996. During the course of those hearings it was revealed that the filing of Debtors' cases was precipitated by the decision of the United States to terminate Periodic Interim Payments ("PIPs") payable bi-weekly to Debtors for home health care services rendered under the Medicare Program of the Department of Health and Human Services. That decision was made, at least in part, as a result of an investigation into alleged acts of fraud by Debtors and some of its insiders which resulted in the conviction for Medicare fraud of Debtors' parent corporation, First American Health Care of Georgia, Inc., and Robert J. Mills, its Chief Executive Officer, Chairman of the Board, and major stockholder. After his conviction, but before filing this case, Mr. Mills resigned as CEO and Chairman of the Board of Directors. During the interim he participated in the selection of Chamberlain and Cansler, Inc., to serve as independent managers of the Debtors, and he negotiated and signed, on behalf of Debtors, a merger agreement whereby Debtors would be acquired by Integrated Health Services, Inc., for total consideration of $150 million, plus the assumption of certain liabilities of Debtors, and an additional payment contingent upon the companies' performance of up to $100 million over five years. Debtors' total liabilities, excluding any liability on account of Medicare overpayments, exceed $110 million.

This Court entered an Order approving the employment of Chamberlain and Cansler, Inc., on an interim basis. The evidence revealed that Chamberlain and Cansler is a "crisis and turnaround" management company. Chamberlain holds a B.S. and M.B.A. degree, has 30 years experience in the business world and for 20 years has been employed in management of troubled compa-

nies, some of which have operated in Chapter 11 of the Bankruptcy Code. Cansler is a CPA and provides financial expertise to the management team. Chamberlain and Cansler were among several management companies referred to Mr. Mills by Mills' counsel and jointly interviewed by them. Mills was advised and understands that the directors and shareholders are to exercise no control over Chamberlain and Cansler in their management of Debtors, and so far as the evidence revealed, Chamberlain and Cansler are disinterested persons within the meaning of 11 U.S.C. Section 101(14). Nevertheless, Mills participated in their selection and in the negotiation of the merger agreement which Chamberlain and Cansler will advocate as part of Debtors' reorganization plan.

11 U.S.C. Section 1104 provides in relevant part:

(a) At any time after the commencement of the case but before the confirmation of a plan, on request of a party in interest *or the United States trustee,* and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause ....

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest *or the United States trustee,* and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incom-

petence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. Section 105 provides in part:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

■ No party has yet requested the appointment of a trustee or examiner in this case. Nevertheless, the court clearly has the authority *sua sponte* to order the appointment of a trustee or examiner. Section 105 is clear in its language that "no provision" of Title 11 permitting a party in interest to raise an issue precludes the court from "sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules...." Section 1104 clearly contemplates that if an investigation of any fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor by current or *former management* is necessary either to protect the interests of creditors, equity security holders, and the estate, or if the debtor's unsecured debt exceeds $5 million, the Court *shall* order the appointment of an examiner on motion and after notice and a hearing. The section is silent as to whether the Court is powerless to act in the absence of such a motion. The plain language of the Code and clear weight of authority, however,

is that Section 105 authorizes the Court *sua sponte* to take such action. *See In re Bibo, Inc.*, 76 F.3d 256 (9th Cir.1996)(holding that bankruptcy court has the authority to appoint a trustee in a Chapter 11 proceeding *sua sponte* ); *Matter of Mother Hubbard, Inc.*, 152 B.R. 189, 197 (Bankr.W.D.Mich.1993)(holding that bankruptcy court may appoint trustee *sua sponte* if from evidence it appears that cause exists or an abuse of the process); *Healthmaster Home Health Care, Inc., v. Shalala (In re Healthmaster Home–Health Care, Inc.)*, Case No. 95–10548, Adv. Pro. 95–1031, slip op. (Bankr.S.D.Ga., April 13, 1995); *In re Public Service Company of New Hampshire*, 99 B.R. 177, 182 (Bankr.N.H.1989)(holding that bankruptcy court may appoint an examiner *sua sponte* ); *In re UNR Industries, Inc.*, 72 B.R. 789 (Bankr.N.D.Ill.1987); *In re Landscaping Services, Inc.*, 39 B.R. 588 (Bankr.E.D.N.C.1984); *see also In re Maruko, Inc.*, 160 B.R. 633, 637 (Bankr.S.D.Cal.1993)(holding that a bankruptcy Court may appoint a "fee examiner" *sua sponte* ); *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3rd Cir.1994)(holding that bankruptcy court may review fee applications *sua sponte* ).

■ In this case, I find that cause exists for the appointment of an examiner, and that this Court should act in the absence of a motion for such appointment for several reasons. First, Debtors' parent and some member or members of their prior management committed fraud. While there is no suggestion that *current management* has committed fraud, or is dishonest, incompetent or has mismanaged Debtors' affairs, section 1104(c) clearly includes fraud in the management of the affairs of the debtor by "former management." Moreover, the fact that current management was selected by Mr. Mills, the convicted CEO of Debtors, creates an appearance, or the potential appearance, that prior management has chartered the course Debtor is following. This connection, tenuous as it hopefully is, between Mr. Mills and Chamberlain and Cansler creates a fog of uncertainty surrounding the issue of the in-

dependence of current management. The credibility of Debtors' future acts will be well served by the involvement of an examiner. Second, I find that such an appointment is in the interest of creditors. These Debtors provide medical services to thousands of elderly home bound patients. These Debtors collect $22 million every two weeks from the United States Treasury to pay for those services. These Debtors certainly owe some, and may owe a huge, repayment obligation to the United States. They also owe substantial sums in excess of $100 million to commercial lenders, trade creditors, employee pension and other benefit plans and the like. The case raises complex legal and factual issues, deals with the use of public funds, the delivery of essential health services, and involves Debtors who are understandably under a cloud of suspicion for their prior acts. The involvement of an examiner will contribute valuable perspective to a case with many competing interests at stake. Third, the resources available to the Court, the United States Trustee, and individual creditors are insufficient in the absence of outside expertise, to evaluate many matters likely to arise during the pendency of this case. The need for such expertise constitutes "cause" independent of any other factor to employ an examiner early in the case whose participation can only be meaningful if it has continuity and substance.

Accordingly, IT IS ORDERED that the United States Trustee appoint, subject to the approval of this Court, an Examiner to serve in this case. The Examiner shall be authorized to perform the duties set forth in 11 U.S.C. Section 1106(b) which provides:

(b) An examiner appointed under section 1104(d) of this title shall perform the duties specified in paragraphs (3) and (4) of subsection (a) of this section, and except to the extent that the court orders otherwise, any other duties of the trustee that the court orders the debtor in possession not to perform.

Those sections read as follows:

(a) A trustee [examiner] shall—

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates.

In addition, the Examiner is authorized to:

1) Monitor the activities of Debtors prior to and since the filing of the case;

2) Consult with Debtors' management and have reasonable access to Debtors' premises and records;

3) Confer with the United States Trustee, the creditors' committee, or individual creditors on any matter;

4) File periodic reports with the Clerk of Court on any matter in the discretion of the Examiner;

5) Employ clerical assistance and be reimbursed for out-of-pocket expenses for the same, and for travel and related expenditures;

6) Receive reasonable compensation for services rendered after making application for same pursuant to 11 U.S.C. Section 330;

7) Request additional authority to act as necessary in fulfillment of duties enumerated herein; and

8) Engage in such other activities as the Court may hereafter authorize or direct.

EXHIBIT "A"

| | | |
|---|---|---|
| FIRST AMERICAN HOME CARE OF ALABAMA, INC., | : | CASE NO. 96–20189 |
| FIRST AMERICAN HOME CARE OF ARKANSAS, INC., | : | CASE NO. 96–20190 |
| FIRST AMERICAN HOME CARE OF CALIFORNIA, INC., | : | CASE NO. 96–20191 |
| FIRST AMERICAN HOME CARE OF COLORADO, INC., | : | CASE NO. 96–20192 |
| FIRST AMERICAN HOME CARE OF FLORIDA, INC., | : | CASE NO. 96–20194 |
| FIRST AMERICAN HOME CARE OF GEORGIA, INC., | : | CASE NO. 96–20193 |
| FIRST AMERICAN HOME CARE OF ILLINOIS, INC., | : | CASE NO. 96–20195 |
| FIRST AMERICAN HOME CARE OF INDIANA, INC., | : | CASE NO. 96–20196 |
| FIRST AMERICAN HOME CARE OF LOUISIANA, INC., | : | CASE NO. 96–20197 |
| FIRST AMERICAN HOME CARE OF MICHIGAN, INC., | : | CASE NO. 96–20198 |
| FIRST AMERICAN HOME CARE OF MISSOURI, INC., | : | CASE NO. 96–20200 |
| FIRST AMERICAN HOME CARE OF NEW MEXICO, INC., | : | CASE NO. 96–20199 |
| FIRST AMERICAN HOME CARE OF NORTH CAROLINA, INC., | : | CASE NO. 96–20201 |
| FIRST AMERICAN HOME CARE OF OHIO, INC., | : | CASE NO. 96–20202 |
| FIRST AMERICAN HOME CARE OF OKLAHOMA, INC., | : | CASE NO. 96–20203 |
| FIRST AMERICAN HOME CARE OF PENNSYLVANIA, INC., | : | CASE NO. 96–20204 |
| FIRST AMERICAN HOME CARE OF TENNESSEE, INC., | : | CASE NO. 96–20206 |
| FIRST AMERICAN HOME CARE OF TEXAS, INC., | : | CASE NO. 96–20205 |
| FIRST AMERICAN HOME CARE OF VIRGINIA, INC., | : | CASE NO. 96–20212 |
| FIRST AMERICAN HOME CARE OF WEST VIRGINIA, INC., | : | CASE NO. 96–20211 |
| FIRST AMERICAN HOME CARE OF VALDOSTA, INC., | : | CASE NO. 96–20210 |
| FIRST AMERICAN HOME CARE OF | : | CASE NO. 96–20209 |
| FT. LAUDERDALE, INC., d/b/a FIRST | : | |
| AMERICAN HOME CARE OF HOLLYWOOD, | : | |
| FIRST AMERICAN HOME CARE OF NAPLES, INC., | : | CASE NO. 96–20208 |
| ABC HOME NURSING, INC., | : | CASE NO. 96–20207 |
| ABC HOME HEALTH AND HOSPICE OF BRUNSWICK, INC., | : | CASE NO. 96–20215 |
| ABC HOME HEALTH & HOSPICE OF ALBANY, INC., | : | CASE NO. 96–20213 |
| ABC HOME HEALTH & HOSPICE OF MACON, INC., | : | CASE NO. 96–20214 |
| OCONEE AREA HOME HEALTH & HOSPICE SERVICES, INC., | : | CASE NO. 96–20216 |
| ABC HOME HEALTH & HOSPICE OF DUBLIN, INC., | : | CASE NO. 96–20217 |
| ABC HOME HEALTH & HOSPICE OF SAVANNAH, INC., | : | CASE NO. 96–20218 |